Jeffery R. Shelton, Lee Johnson & Associates, Beaumont, for appellant.

C. Haden Cribbs, Jr., Beaumont, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

**Deborah A. WHITTINGTON, Appellant,**

v.

**Bobby Don WHITTINGTON, Appellee.**

**No. 09–91–294 CV.**

Court of Appeals of Texas, Beaumont.

April 22, 1993.

## OPINION

BURGESS, Justice.

This is an appeal from an order denying appellant's Motion to Enforce Property Division. Appellant Deborah Whittington requested clarification and enforcement of that part of the original divorce decree which awarded her a note for $49,500 secured by a lien on property, as follows:

A note for $49,500.00, due and payable one year from September 21, 1988, at no interest for the first year, with 10% interest after date of maturity, and providing for interest and for acceleration of matu-

rity in event of default and for attorney's fees, secured by a lien on the property located and known as 695 Pinchback, Beaumont, Jefferson County, Texas, being further identified as that property described in a certain Deed of Trust dated March 2, 1982, from Bobby Don Whittington to J.O. Crooke, Trustee, of record in Volume 2063, Page 425, M & L Records, Jefferson County, Texas, being also that land described in a general warranty deed dated May 6, 1981, of record in Volume 2306, Page 1906, Deed Records, Jefferson County, Texas, to which reference is made for all purposes. The note for $49,500.00 to Petitioner and the lien securing the same are to be subordinate and inferior to the purchase money lien or any tax liens existing as of the 21st day of September, 1988.

The decree is silent as to who was to execute the note, but that would have been an appropriate matter for clarification under TEX.FAM.CODE ANN. § 3.72 (Vernon 1993). In any event, the parties, the trial court and we assume it was Bobby Don Whittington who was to execute the note and the deed of trust. The motion was heard before the trial court on August 27, 1991. On this same date Judge Britton E. Plunk sent out the following letter which sets forth the findings and conclusions of the trial court:

Based on the evidence produced at the trial of the Motion to Enforce Judgment heard on August 27, 1991, the Court rules as follows:

1. The Court specifically finds that the $49,500 note referenced to as Item # 1 on Exhibit A to the Final Decree of Divorce was to compensate the Peitioner (sic), Deborah Whittington, for her ½ interest in the equity accumulated on the commercial property where the business was located. I think this clearly was the intent of the parties since over $400,000 cash was divided by the parties at the time of the divorce. Since the property has now been foreclosed on by the Lender, any equity accumulated has been lost. The Court therefore finds that the Re-

spondent does not owe the Petitioner $49,500.

2. The request for attorney fees is DENIED.

> Sincerely,
> /s/ Britt Plunk
> Britt Plunk
> District Judge
> 356th Judicial District
> Hardin County, Texas

Deborah Whittington construed this as a judgment and filed a motion and an amended motion for reconsideration. On December 2, 1991, the trial judge signed an order denying appellant's Motion to Enforce Property Division. On that same date the trial court signed an order denying appellant's Motion to Reconsider and Motion for New Trial. Appellee has filed no brief in this appeal. The only response appellee Bobby Don Whittington has made in this appeal was the filing of two Motions for Extension of Time to File Brief.

Appellant brings three points of error. Point one contends that the trial court erred in failing to enforce the provision of the Divorce Decree awarding the promissory note to appellant. Point two says that the trial court erred by basing its decision to deny appellant's Motion to Enforce Property Division on parol evidence. Point three contends that there is no evidence, or insufficient evidence, to support the trial court's Order denying appellant's Motion to Enforce Property Division.

Deborah Whittington's motion to enforce requested the trial court order her ex-husband to (1) execute certain deeds;[1] (2) sign the $49,500 promissory note; (3) to specify the time, place and manner of delivery of the deeds and promissory note; (4) in the alternative, enter a money judgment for damages if the delivery of the deeds and promissory note was no longer an adequate remedy; and (5) award reasonable attorney's fees. Bobby Don Whittington filed no pleading. While Mrs. Whittington sought several remedies, the initial thrust was to have her ex-husband execute the note required by the divorce decree. While

---

1. Mr. Whittington agreed to do this, therefore it was not an issue before the trial court.

Mrs. Whittington may have been dilatory in seeking this relief, no affirmative defenses, such as limitations [2] or laches was pleaded by Mr. Whittington.

 The trial court interpreted the intent of the parties at the time of the divorce decree when he found that "the purpose of the promissory note was to secure the Petitioner's equity in the property in question". This interpretation is outside the purview of the motion and a modification of the original decree. Furthermore, we take it to be the trial court's position to be that even if the note had been executed according to the terms of the divorce decree that when the note matured on September 21, 1989, Mrs. Whittington could not have sought and received a personal judgment against Mr. Whittington, but would have been required to foreclose the Deed of Trust. This is simply not the law. Where there is a debt secured by a note, in turn secured by a lien, the note and the lien constitute separate obligations so that suit may be had on the note to obtain a personal judgment, and later suit may be had on the lien if the personal judgment is not satisfied. *Taylor v. Rigby*, 574 S.W.2d 833 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). That the security no longer existed would be no defense to the note. The existence of the collateral would be immaterial to a suit for judgment on the debt. *Garza v. Allied Finance Co.*, 566 S.W.2d 57, 62 (Tex.Civ.App.—Corpus Christi 1978, no writ).

 *Reiter v. Reiter*, 788 S.W.2d 201 (Tex.App.—Fort Worth 1990, writ denied), is somewhat analogous. Mrs. Reiter had an executed note and a divorce decree which imposed an equitable lien on property. She sought an enforcement of the equitable lien by having Mr. Reiter execute a Deed of Trust. The cases are similar in that both required the execution of a note, however in our case Mrs. Whittington is seeking an enforcement of the note requirement, not seeking to have the judicially imposed lien converted to a deed of trust. The *Reiter* court held the trial court

acted within its authority in requiring Mr. Reiter to execute the deed of trust since simply requiring a documentation of the equitable lien granted by the court in the original decree did not alter or change any substantive property rights of the parties. *Reiter*, 788 S.W.2d at 204. The same logic applies to the case before us. Having Mr. Whittington execute the note is only a present day documentation of the note evidenced in the decree.

In summary, there was nothing for the trial court to clarify other than perhaps who was to execute the note. The divorce decree was clear and unambiguous. Mrs. Whittington was to have a $49,500 note from Mr. Whittington. It was the trial court's duty to enforce that decree by requiring Mr. Whittington to execute that note and giving him a reasonable time for compliance.[3] Point of error one is sustained. We decline to rule upon points of error two and three. The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

The record on appeal shows that on April 13, 1988, appellant, Deborah A. Whittington, filed her Original Petition for Divorce against our appellee, Mr. Bobby Don Whittington. Mr. Whittington, Respondent below, responded to appellant's Original Petition for Divorce by filing a general denial and cross action. The property inventories filed in that matter set forth a rather complex community estate. On October 13, 1988, the trial judge signed the Final Decree of Divorce awarding to appellant, as her sole separate property, all properties listed on Exhibit A attached to the Decree. Appellee was awarded all properties listed on Exhibit B to such Decree. This October 13, 1992 Decree of Divorce was approved by appellant and appellee, both as to form and substance.

---

**2.** See TEX.FAM.CODE ANN. § 3.70(c) (Vernon 1993).

**3.** See TEX.FAM.CODE ANN. § 3.72(c) (Vernon 1993).

Appellant, Petitioner below, focused her Motion to Enforce Property Division upon Item 1 of Exhibit A, which reads verbatim as follows:

A note for $49,500.00, due and payable one year from September 21, 1988, at no interest for the first year, with 10% interest after date of maturity, and providing for interest and for acceleration of maturity in event of default and for attorney's fees, secured by a lien on the property located and known as 695 Pinchback, Beaumont, Jefferson County, Texas, being further identified as that property described in a certain Deed of Trust dated March 2, 1982, from Bobby Don Whittington to J.O. Crooke, Trustee, of record in Volume 2063, Page 425, M & L Records, Jefferson County, Texas, being also that land described in a general warranty deed dated May 6, 1981, of record in Volume 2306, Page 1906, Deed Records, Jefferson County, Texas, to which reference is made for all purposes. The note for $49,500.00 to Petitioner and the lien securing the same are to be subordinate and inferior to the purchase money lien or any tax liens existing as of the 21st day of September, 1988.

Glaring is the silence as to who is obligated to sign this note. For purposes of this appeal and this dissent, I shall assume that it was appellee who was to execute same, however appellee never signed a note nor other referenced documents securing a lien in appellant's favor. There is no evidence before us that Bobby Don ever refused to execute these instruments. At the hearing on appellant's Motion to Enforce Property Division, appellee's attorney represented to the court that Bobby Don had never refused to sign any instruments to effectuate the court's decree in that no instruments were ever presented to him for signature after the Decree of Divorce was signed.

Nothing in the record indicates that appellant ever pursued efforts of obtaining a signed promissory note secured by a deed of trust. The subject property which was to secure the $49,500.00 note has undergone foreclosure by the first lien holder, making the court ordered security for said note an impossibility. Appellant brings this action two and one-half years after the signing of the Original Divorce Decree asking the trial court to: Enforce a division of property; modify the court's Decree of October 13, 1988; interpret its own judgment; and grant appellant a money judgment on the note along with attorneys fees.

The quoted letter of October 27, 1991, sets out an effort by the trial court to interpret its October 13, 1988, Decree of Divorce as requested by appellant. In this letter the court specifically finds that the $49,500.00 note was to compensate Petitioner, appellant Deborah Whittington, for her one-half interest in the equity accumulated on the commercial property where the business was located.

Appellant brings three points of error. Point one contends that the trial court erred in failing to enforce the provision of the Divorce Decree awarding the promissory note to appellant. Point two says that the trial court erred by basing its decision to deny appellant's Motion to Enforce Property Division on parol evidence. Point three contends that there is no evidence, or insufficient evidence, to support the trial court's Order denying appellant's Motion to Enforce Property Division.

Although it is clear that Deborah Whittington sought several remedies in the trial court, I believe the underlying thrust of all requested remedies was to have the trial court modify or alter the original Decree of Divorce.

Appellant's brief states that subsequent to the October 13, 1988 Divorce Decree, appellant made demand upon appellee to execute and deliver to appellant the promissory note for $49,500.00 and that appellee refused. Appellant testified at the proceeding below and there is no testimony whatsoever of a demand being made upon appellee to execute a promissory note or that appellee ever refused to execute a promissory note. Obviously, had such demand been made upon appellee and had appellee refused such demand, appellant's proper remedy would have been by way of contempt under TEX.FAM.CODE ANN. § 3.76

(Vernon 1993). Approximately two and one-half years transpired since the Original Divorce Decree was signed and appellant took no action until her filing of this Motion to Enforce Property Division.

Appellant states that appellee is now attempting to collaterally attack the judgment of October 13, 1988. I think the opposite is true in that it is appellant who is making a collateral attack on that judgment. The only action taken by Mr. Whittington in response to appellant's Motion to Enforce Judgment was to appear at the hearing for examination and cross-examination. Mr. Whittington has filed no pleadings in this action. A thorough review of the record indicates no attack upon the October 13, 1988 judgment by Mr. Whittington. In response to questions propounded to Mr. Whittington, he certainly gave his understanding of his obligations and duties under the Divorce Decree. I do not perceive this to be a collateral attack by appellee upon the judgment, but rather an effort by appellant to modify and alter the original Decree of Divorce.

Appellant further contends that appellee has failed to plead or prove that there was ambiguity, fraud, accident or mistake in the agreement made a part of the Original Decree. I give no heed to this allegation for it was not incumbent upon appellee to make such a pleading or proof. Appellee simply appeared at the hearing to testify as to his understanding of the Original Divorce Decree and the agreement of the parties.

TEX.FAM.CODE ANN. § 3.71 (Vernon 1993), sets the perimeter within which a trial court may subsequently re-examine a final decree of divorce. Titled Enforcement of Division of Property, the section reads as follows:

(a) Except as provided by this subchapter and by the Texas Rules of Civil Procedure, a court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. Further orders may be entered to enforce the division, but these orders shall be limited to orders *in aid of or in clarification* of the prior order. The court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed. An order of enforcement does not alter or affect the finality of the decree of divorce or annulment being enforced. (emphasis mine).

(b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court to enter and is unenforceable.

(c) The power of the court to enter further orders to aid or clarify the property division is abated during the pendency of any appellate proceeding.

The key issue in this appeal is whether the trial court's order dated December 2, 1991, constituted only a clarification of the prior decree or whether such order amounted to an amendment, modification, alteration or a change in the actual substantive division of property set forth in the Final Decree of Divorce.

Was the "Note" previously set forth, a substantive division of property intended to award appellant $49,500.00 of the community estate, or was the note merely intended as a protection of appellant's equity, should there exist an equity, in the real property which was to secure said note? I believe, as did the trial court, that the purpose of the "Note", was to secure appellant's equity in the real property located at 695 Pinchback, Beaumont, Jefferson County, Texas.

I shall address certain facts suggestive of clarification of judgment as opposed to modification or alteration.

From the record we find the following:

1. The Final Decree of Divorce ordered appellant and appellee to pay all taxes on properties awarded to them. The only exception to this tax payment order was as to the property at 695 Pinchback. Regarding the Pinchback property the Court ordered:

It is further agreed and understood that the parties are jointly and equally liable for unpaid ad valorem taxes on the prop-

erty at 695 Pinchback, Beaumont, Jefferson County, Texas (Item 1 on Exhibit B, hereto; also referred to in Item 1 on Exhibit A hereto) for 1987, and for 1988 taxes thereon, prorated until September 21, 1988. The foregoing provisions as to taxes are exceptions to, and prevail over the subsequent provisions for taxes.

Interesting is the fact that this quoted portion of the Final Decree is in the nature of an agreement between the parties as opposed to a strict order of Court, which gives at least some indication that the parties intended an equitable division of community property rather than an outright substantive division and award to appellant of $49,500.00.

2. Exhibit B to the Final Decree of Divorce is a list of properties both real and personal, which was awarded to appellee. To determine whether the order presently appealed from amounts to a clarification or a modification of the substantive division of properties we list some of the community assets awarded to appellee in Exhibit B:

1. The Land & Industrial Shop located and known as 695 Pinchback, Beaumont, Jefferson County, Texas more particularly described in a general warranty deed dated 5/6/81, of record in Volume 2306, Page 196, Deed Records, Jefferson County, Texas, subject to the lien to secure Petitioner's note of $49,500.00 on such property. Respondent is to assume all debt and obligation owed on such property, including specifically the $2,000.00 payment due on October 1, 1988. The $49,500.00 note and lien securing the property to Petitioner are to be subordinate and inferior to the purchase money lien and any tax liens existing as of September 21, 1988, but superior to any subsequents (sic) liens unless specifically subordinated by agreement of Petitioner.

2. Two town houses out of Woodhollow Town Homes, in Beaumont, Jefferson County, Texas:

(1) Unit 15, Bldg. C, Sec. 1, of record in Volume 2078, Page 454, Deed Records, Jefferson County, Texas

(2) Unit 31, Bldg. F, Sec. II, of record in Volume 2103, Page 229, Deed Records, Jefferson County, Texas

3. Homestead & 15 acres, Nona, Hardin County, Texas, more particularly described in general warranty deed dated November 21, 1973, of record in Volume 599, Page 335, Deed Records, Hardin County, Texas, and in Deed of Trust dated November 21, 1973, of record in Volume 128, Page 594, Deed of Trust Records, Hardin County, Texas, which is confirmed to be Respondent's separate property.

4. Two (2) 4.97 ac. tracts, Blk. 16, Nona Mills Subdivision, BBB & C, No. 331, Abst. 124, described in general warranty deed dated November 7, 1975, of record in Volume 624, Page 502, and general warranty deed dated November 14, 1975, of record in Volume 624, Page 580, Deed Records, Hardin County, Texas, which is confirmed to be Respondent's separate property.

5. 15.69 acres, BBB & C, Sec. 311, Abstract 124, Hardin County, Texas, described in general warranty deed dated 9–14–78, of Volume 677, Page 616, Deed Records, Hardin County, Texas, the title being in the name of Shockley & Whittington Welding Works, Inc. Pension Trust Fund.

6. Respondent's IRA which has a balance of $8516.00. Respondent owes Petitioner an owelty in the amount of $2280.00 from this IRA.

Respondent's life insurance No. FLO684263–CV with Republic National Life which has a current cash value of $4339.00. Petitioner has an owelty in the amount of $1406.00 from this life insurance policy.

Allied Bank Certificate of Deposit No. 001000600676 in the amount of $105,-904.00 and Certificate of Deposit No. 57307149 at Spindletop Savings in the amount of $100,000.00. Petitioner owes Respondent an owelty of $2952.00 from Certificates of Deposit Numbers 000612172 and 000613255 at Allied Bank. Respondent has a total owelty due him in the amount of $2952.00, and Petitioner has a total owelty due her in the amount

of $3686.00. Respondent shall pay to Petitioner the total amount of $734.00 in cash from the balances of the accounts awarded to Respondent.

I think it obvious that were it the intent, agreement or understanding of the parties or the trial court that appellant was to receive a substantive division of community assets in the sum of $49,500.00, such could have, and no doubt would have, been accomplished when the community assets were divided. Certainly there was real property other than the Pinchback property to adequately secure a substantive award of $49,500.00 to appellant. Furthermore, under item No. 6 of Exhibit B, appellee was awarded over $200,000.00 in certificates of deposit sufficient to either make an immediate award to appellant or to at least encumber same with a lien favoring appellant.

3. Appellant's inventory estimates the value of the Pinchback property at $350,000.00. The trial court, in its effort to equalize values intended that appellant simply have a lien on the Pinchback property should same be subsequently sold for profit. The property was not sold for profit, but rather foreclosed upon with all equity being lost. It is clear from the previously quoted provision of Exhibit A that appellee, Bobby Don Whittington, was not directly ordered to execute "a Note," nor does there exist any language in the body of Final Decree of Divorce or Exhibits requiring a personal obligation by Bobby Don Whittington. It is also clear that the only security appellant was to have on "a Note" was that security, if any, which the property may provide.

4. Exhibit B to the original divorce decree represents all properties both real and personal that Bobby Don Whittington was to receive as his share of the community estate. Item 1 of Exhibit B is the corollary to item 1 of Exhibit A. Nowhere do we find a personal obligation imposed upon Bobby Don Whittington to pay appellant $49,500.00. The strongest argument favoring such personal obligation would be in language contained in the first sentence of item 1, Exhibit A. This language, "due and payable one year from September 21, 1988," may well give rise to a date certain, but Query, a date certain for what? I certainly cannot conclude from the entirety of the record that on a date certain Bobby Don Whittington was obligated to personally pay unto Deborah the sum of $49,500.00. I perceive the fair reading and interpretation to be that on a date certain Bobby Don Whittington could purchase Deborah's equity in the property and if Bobby Don failed to do so then Deborah could increase her equity interest by ten percent after maturity.

5. Appellant lackadaisically waits approximately two and one-half years before pursuing her claim that the $49,500.00 was intended as a substantive division of community property rather than a note secured by a deed of trust to protect her equity interest.

Bobby Don was awarded the Pinchback property subject to existing liens and a subordinate lien favoring Deborah for $49,500.00. How else could Bobby Don give Deborah an effectual subordinate lien on the Pinchback property without executing a note? I cannot conclude that simply because Bobby Don was to sign a note that such became a personal obligation to Bobby Don regardless of the status of the Pinchback property.

Foreclosure on the Pinchback property foreclosed any equity that appellant or appellee had. For the trial court to have granted appellant's Motion to Enforce Judgment would have, in my opinion, required a modification, alteration and change in the actual substantive division of property previously approved in the Final Decree of Divorce. This is prohibited by Section 3.71 of the Family Code.

I believe *Reiter v. Reiter*, 788 S.W.2d 201 (Tex.App.—Fort Worth, 1990, writ denied), to be factually similar to our case. In *Reiter*, the decree of divorce was entered July 1, 1985, and by its terms Mr. Reiter ("Speedy") was awarded 15 acres of real property and Ms. Reiter (Frances) was awarded a money judgment of $30,000.00 payable by Speedy. The decree ordered Frances to execute a deed to Speedy cover-

ing the 15 acres and ordered Speedy to execute a promissory note to Frances for $30,000.00. *Reiter,* like the case before us, ordered that an equitable lien be impressed on the 15 acre tract to assure the payment of the $30,000.00.

The *Reiter* Court determined that the original decree of divorce impressed an equitable lien upon the 15 acres awarded Speedy to secure the $30,000.00 and that the trial court acted within its authority in ordering Speedy to execute a deed of trust.

Our case is yet a step beyond *Reiter,* for our appellant sought, in effect, to have our trial court determine and hold that the $49,-500.00 was not an equitable lien on the Pinchback property, but rather a personal obligation of Bobby Don. Neither the original Divorce Decree nor the record as a whole supports the proposition that the $49,500.00 was a debt owed by Bobby Don to Deborah. Had the trial court held otherwise, such would clearly be improper under Section 3.71. I would overrule point of error one.

Regarding appellant's point of error two alleging trial court error in basing its denial of appellant's Motion to Enforce Property Division as parol evidence, I am unclear as to appellant's contention. Appellant cites *Wilkins v. Bain,* 615 S.W.2d 314 (Tex. App.—Dallas 1981, no writ), as authority for the proposition that since Bobby Don did not plead or prove ambiguity, fraud, accident or mistake that parol evidence cannot be admitted to contradict the original Divorce Decree. I fail to see the connection, since it was appellant who sought to alter the original Decree. Point of error two should be overruled.

Appellant's contention that there was no evidence in point of error three or alternatively, insufficient evidence to support the trial court's denial of appellant's motion, is clearly without merit. I would also overrule point of error three and affirm the judgment below.